United States District Court
Southern District of Texas
**ENTERED**
April 14, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CRIM. ACTION NO.: 5:23-MJ-607** |
| § | |
| **JONATHAN CAVRIALES** § | |

## PROBABLE CAUSE FINDING

### I.   FACTS

Defendant, Jonathan Cavriales, was charged by criminal complaint on March 27, 2023, with kidnapping, in violation of Title 18, United States Code, Section 1201. On April 11, 2023, this Court held a preliminary examination hearing to determine whether there was probable cause to believe that an offense has been committed and the defendant committed it.

At the preliminary examination hearing, the Government presented Federal Bureau of Investigation (FBI) Special Agent (SA) James Reagan as its sole witness. Agent Reagan testified that an investigation began on Friday, March 24. The FBI learned that earlier that day, at approximately 1:00 a.m., a blue Dodge Ram truck drove south across a port-of-entry into Mexico and a man was seen and heard calling for help. He was in distress and trying to escape from the vehicle. After a missing person report was received, the FBI learned that the man who was trying to escape was Erik Tadeo Ramirez ("Ramirez"). Ramirez was at a residence in Laredo when men in a blue truck assaulted and forcibly kidnapped him. They were

in a blue truck. There were around five (5) witnesses who observed the event. The FBI confirmed that the blue truck drove south into Mexico with Ramirez.

The FBI spoke with the city employees that operate the toll booths at the port-of-entry. The toll employees observed Ramirez and stated that he was in distress with blood on his face.

The blue Dodge Ram truck that crossed into Mexico is registered to Erica Balderas ("Ms. Balderas"). Ms. Balderas is Defendant's mother. She told the FBI that earlier in the day, her mother ("Defendant's grandmother") called Ms. Balderas and stated that Defendant was safe and sleeping at Defendant's grandmother's residence in Nuevo Laredo, Mexico.

The FBI learned from witnesses at a residence in Laredo that Ramirez may have stolen money from a criminal organization based in Mexico which may have been a motive behind his kidnapping.

On cross-examination, SA Reagan testified that there's no evidence that Defendant was under duress when he drove the truck into Mexico through the port-of-entry. SA Reagan was not able to see whether Defendant was being held at gunpoint while drive into Mexico. There were two to three individuals who exited the blue truck in order to kidnap Ramirez. No witness told the FBI that Defendant assaulted Ramirez.

The FBI was notified by U.S. Customs and Border Protection ("CBP") that Defendant was attempting to cross back into the U.S. without identification. The FBI went to the port-of-entry and spoke to Defendant there. Defendant had minor

injuries. SA Reagan could not recall whether the photos taken by CBP of Defendant revealed any injuries to his wrists from being tied together. Defendant was cut on his mouth. During his interview with the FBI, Defendant stated that he had been the victim of a carjacking. There is no one holding a gun to Defendant in the video recording from the port-of-entry. The FBI did not receive a missing persons report for Defendant. Defendant had not yet been arrested when Ms. Balderas spoke with the FBI.

At the time of his interview, Defendant told the FBI that he was the victim of a carjacking and was forced to participate in the kidnapping of an unknown individual. Defendant told the FBI that he tried to make contact with one of the toll authorities at the port-of-entry while he was driving into Mexico, but that is inconsistent with witness testimony from the toll authorities. SA Reagan couldn't determine how many people were in the back seat of the blue truck from viewing the port-of-entry video. It was clear that as Ramirez tried to escape from the truck, someone else attempted to pull him back into the truck. There was no one in the front passenger seat of the truck.

After the Government rested, Counsel for Defendant presented Ms. Balderas as Defendant's sole witness. She is Defendant's mother. On March 23, 2023, Ms. Balderas began receiving phone calls from her son's phone beginning at 1:00 a.m. until 4:00 a.m. Men on the phone line told her that they had her son. They told her not to call the police or make a report if she wanted to see her son alive. They told her to cooperate and that they would call again later. She was fearful and didn't

know what to do. The men told her that they didn't know why he was there, but that if she cooperated, they would give her back her son.

The police contacted Ms. Balderas the following day. Ms. Balderas told the police that her son was safe in Nuevo Laredo, Mexico because she was very afraid that her son was going to be killed. Defendant never made it to Ms. Balderas' mother's house. Ms. Balderas gave that story to the police in order to comply with the unknown men's threat over the phone. Ms. Balderas has never seen her son get into trouble, fight, or associate with any members of any criminal organization.

## II. ANALYSIS

Preliminary examination hearings exist purely to determine if there is probable cause to detain a defendant, pending a grand jury hearing. *United States v. Johnson*, 514 F.2d 92, 94 (5th Cir. 1975); *United States v. Coley*, 441 F.2d 1299, 1301 (5th Cir. 1971); *see also* 1 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Criminal, § 91 (4th ed. 2008) (citing Fed. R. Crim. P. 5.1(e)). To determine whether probable cause exists, the magistrate judge must determine: (1) an offense has been committed, and (2) the defendant committed the offense. *See* Fed. R. Crim. P. 5.1(e). The probable cause threshold is low. Probable cause exists upon the government's showing that "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Criminal, § 92 n.16 (internal quotations and citations omitted); *see United States v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010) ("Proof of

probable cause requires less evidence than . . . proof beyond a reasonable doubt—but more than 'bare suspicion.'") (quoting *United States v. Rayborn*, 872 F.2d 589, 593 (5th Cir. 1989)).  At the preliminary examination hearing, the defendant is permitted to cross-examine witnesses and may introduce his own evidence; however, the defendant "may not object to evidence on the ground that it was unlawfully obtained." Fed. R. Crim. P. 5.1(e).  Moreover, hearsay evidence may be used in making the probable cause determination.  Fed. R. Evid. 1101(d)(3).  If the Court finds that there is "no probable cause to believe an offense has been committed or the defendant committed it, the magistrate judge must dismiss the complaint and discharge the defendant," but this does not preclude the government from later prosecution of the charge in the future.  Fed. R. Crim. P. 5.1(f).

"Probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 463 U.S. 213, 241 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).  Evidence presented at the preliminary hearing should be viewed in a light most favorable to the prosecution, and all potential inferences must be resolved in favor of the prosecution.  *See generally id.* at 237 n.10 (stating that any doubts as to the existence of probable cause should be resolved in favor of upholding the authorization).  "A magistrate may become satisfied about probable cause on much less than he would need to be convinced.  Since he does not sit to pass on guilt or innocence, he could legitimately find probable cause while personally entertaining

5

some reservations. By the same token, a showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause." *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973).

Based on the evidence presented, the Government has met its burden.

### III. FINDING

After considering the evidence presented at the preliminary examination hearing and viewing the evidence in a light most favorable to the prosecution, the Court finds there is sufficient probable cause to find that Defendant kidnapped another person, in violation of Title 18, United States Code, Section 1201. FBI SA Reagan testified that the FBI learned that Ramirez was kidnapped in retaliation against his statements that he had stolen money from a criminal organization. Witnesses told the FBI that Ramirez was assaulted by multiple persons at a residence in Laredo and taken without his consent from the United States into Mexico. The witness testimony is corroborated by video evidence which places Defendant behind the steering wheel of a blue Dodge Ram truck which left the United States via a port-of-entry in Laredo, Texas on March 24, 2023. Ramirez was seen trying to escape from the truck as it crossed the bridge. The Undersigned finds that the testimony of SA Reagan is both credible and reliable.

Counsel for Defendant doesn't argue that the kidnapping of Ramirez didn't occur. Rather, he argues that Defendant was forced to cooperate with the kidnappers. However, the limited synopsis of toll worker statements and video

evidence descriptions before the Court do not support a finding that Defendant's participation in the kidnapping was unwilling or involuntary.

Ms. Balderas testified that the men on the phone told her that they didn't know why her son was being held, and that she wasn't informed of how she should cooperate, other than to remain silent. It is unclear why any such men from a criminal organization would go out of their way to alert Ms. Balderas of Defendant's predicament if they wanted nothing else from her other than silence. A more plausible course of action would have been for them to refrain from speaking to Ms. Balderas at all.

Therefore, resolving all potential inferences and viewing the evidence in a light most favorable to the prosecution, the Court FINDS THAT THERE IS PROBABLE CAUSE to require Defendant, Jonathan Cavriales, to appear for further proceedings.

IT IS SO ORDERED.

Signed this 14th day of April, 2023.

_____
Christopher dos Santos
United States Magistrate Judge